Filed 6/29/22  P. v. Traylor CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FAREED TRAYLOR,<br><br>    Defendant and Appellant. | A159338<br><br>(Alameda County<br>Super. Ct. No. 17CR004462) |

Defendant Fareed Traylor appeals a judgment entered upon a jury verdict finding him guilty of numerous sexual crimes against his daughter, D. Doe (Doe).  He contends the trial court improperly admitted prosecution evidence, that it improperly excluded defense evidence, that it instructed the jury erroneously regarding the requirement of a unanimous verdict, and that it erred in imposing fines in the absence of evidence that he was able to pay them.  We agree with defendant that evidence supporting his defense was improperly excluded and that he suffered prejudice, and we accordingly reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Doe's Testimony

*A. Sexual Abuse*

Doe was 19 years old at the time of the 2019 trial.  When she was a young child, she lived with her maternal relatives.  She then lived for a time

1

with her paternal grandmother and, when she was about six years old, went to live with defendant, who is her father. Defendant's then girlfriend lived in the home, and soon after Doe arrived defendant's son, M., joined the household. Doe and M., who was a few months younger than Doe, shared the apartment's second bedroom.

When Doe was six or seven years old, defendant began compelling her to orally copulate him daily. She never refused defendant's demands because she was "scared" to do so; she did not want him to be upset with her or to use force. Defendant told her this was something that two people did when they loved each other, and she trusted him and thought there was nothing wrong with it. However, he told her not to tell anyone about it because other people were not "okay with it."

Defendant's acts against Doe expanded to include vaginal intercourse by the time she was approximately 10 years old. She specifically recalled that her brother M. walked into defendant's bedroom on one occasion while defendant was having intercourse with her during a time, between 2008 and 2010, when the family was living in San Leandro. During this period, defendant engaged in oral or vaginal sex with her almost every day unless one of his girlfriends or another adult was at the house. Later, the sexual acts took place about four times a week.

Beginning when Doe was around nine years old, defendant began giving her alcoholic beverages to drink on occasion before engaging in sexual activity with her. On her twelfth birthday, he began giving her "blunts," or marijuana wrapped in a tobacco leaf, before engaging in sex with her.

Doe had a close friend whom she had seen regularly since fifth grade. At some point, either in elementary school or middle school, Doe told her friend by text message about the sexual abuse.

When Doe was 15 years old, it became clear to her that what defendant was doing was wrong, and she told defendant that he was molesting her and that she did not want to have sex with him anymore. The sex acts stopped after this conversation. She also told her brother, M., about the abuse but asked him not to tell anyone about it because she did not want to get defendant into trouble.

*B. Uncharged Sexual Abuse*

About a month before the trial, Doe revealed for the first time that defendant orally copulated her beginning in the early days of the events at issue here. She had not discussed these previously due to embarrassment; she felt "[e]mbarrassed, ashamed, disgusted" when she first discussed these acts with the prosecutor and an inspector.

*C. Evidence of Earlier Molestation by Older Half-Brother*

Doe had a vague memory of being sexually molested as a young child, before she went to live with defendant, although she did not remember many details. Defendant told her the person who abused her was her older half-brother, her mother's son.

*D. Doe Reports the Abuse After Conflict with Defendant*

Doe began dating older boys and men when she was 11 or 12 years old. Because she was having sex with her father, she did not think there was anything wrong with dating older people. Defendant was angry each time he found out she was dating someone older than 18, which irritated Doe, and she ignored his rules.

In 2017, after Doe sneaked out of the house one night to be with her boyfriend, defendant told her she could not stay in the family home any longer. Defendant took her house key, and she left. She spoke with school staff the following day, and they contacted the police.

## II.    M.'s Testimony

M. testified that he recalled walking into defendant's bedroom while the family was living in San Leandro.  Defendant was naked, and Doe was in the bedroom with him.  When M. entered the room, she went quickly to the bathroom with a blanket wrapped around her body.

On other occasions, M. knew that defendant and Doe were in defendant's bedroom together with the door closed.  When the family was living in a shelter, defendant and Doe would spend time alone in the room the family shared "[a]ll the time," and afterward M. would often see Doe in defendant's bed, sometimes under the covers.  Later, he recalled seeing Doe on occasion leaving defendant's room dressed in an adult-sized sweatshirt and going directly to the bathroom, on one occasion hiding her face with her hand.  M. sometimes knocked on the door when defendant and Doe were in the bedroom together, and he recalled defendant telling him not to disturb them.  He never saw or heard sexual abuse taking place.  He sometimes saw defendant and Doe smoking marijuana in defendant's bedroom or drinking alcohol together.

M. also testified that when he was 14 or 15 years old Doe confided in him that defendant had been having sex with her but that he had stopped doing so.

## III.   Testimony of Doe's Friend

Doe's friend, L.D., testified that when they were 12 years old, Doe told her that defendant had molested her a couple of years previously.

## IV.   Defendant's Testimony

Defendant testified that he learned Doe was his daughter in 2003, when she was about three or four years old.  Doe began living with defendant's mother in 2005, and in March 2006, when Doe was six years old,

4

she moved to defendant's home. In approximately August of the same year, she told defendant that, years ago, her older brother "was doing things to her" and that he made her bleed between her legs.

Defendant denied that he ever sexually abused Doe or gave her marijuana or alcohol. He denied having a practice of spending hours at a time alone with Doe. He explained the incident in which M. saw him naked by testifying that he had fallen asleep naked after working a long night shift at his job and was awakened by the children coming home from school.

## V. Verdict and Sentence

The jury convicted defendant of four counts of oral copulation with a child aged 10 or younger (Pen. Code, § 288.7, subd. (b)[1]; counts 1, 2, 3, & 4); one count of sexual intercourse with a child aged 10 or younger (§ 288.7, subd. (a); count 5); one count of continuous sexual abuse of a child under the age of 14 (§ 288.5, subd. (a); count 6); and one count of a lewd act on a child who was 14 years of age (§ 288, subd. (c)(1); count 7). Counts 1, 2, 3, and 4, respectively, involved acts committed when Doe was seven, eight, nine, and ten years old. Count 5 involved sexual intercourse when Doe was nine or ten years old. Count 6 involved three or more acts of substantial sexual conduct when Doe was 11 to 13 years old, and count 7 an act when she was 14 years old.

The trial court sentenced defendant to consecutive prison terms of 15 years to life for counts 1, 2, 3, and 4; a consecutive term of 25 years to life for count 5; the middle term of 12 years for count 6, and a consecutive subordinate term of eight months for count 7, for a total sentence of 97 years and eight months to life.

---

[1] All undesignated statutory references are to the Penal Code.

5

## DISCUSSION

### I.      Evidentiary Issues

*A. Background*

Defendant contends the trial court erred in excluding evidence in support of his defense that he never sexually abused Doe and in admitting evidence of uncharged sexual offenses as propensity evidence.

i.      Exclusion of Defense Evidence

First, defendant sought to introduce evidence of a 2006 Child Protective Services (CPS) investigation into possible sexual abuse by Doe's maternal half-brother before Doe began living with Father.  According to defense counsel, the evidence would show that at the end of August 2006, shortly after Doe had moved into his home, defendant reported to CPS that Doe was engaging in sexually inappropriate behavior.  Doe was interviewed just over a week later, two weeks before her seventh birthday, and she told the evaluator that no adult had abused her sexually, that the sexual abuse stopped because she moved to her father's house, that her father had told her to tell the truth in the interview, and that if someone were sexually abusing her, she would " 'tell anyone who helps me.' "  This occurred, defense counsel pointed out, at a time defendant himself was alleged to have been sexually abusing Doe.  The court excluded evidence of the interview under Evidence Code section 352, concluding that it was not exculpatory and that the jury would be confused about whether Doe's statements in the interview referred to abuse by her father or by her older half-brother.

The trial court also precluded defendant from introducing a journal entry the defense proffered as evidence Doe had a motive to fabricate her allegations of abuse, in that she and defendant had long argued about whether she should be allowed to see the maternal half-brother.  The journal

6

entry was from 2014 and showed that Doe reconnected with her half-brother when she was 14 years old and she and defendant argued about it the next day. The trial court did not allow the journal entry to be admitted, concluding it would result in a "mini trial" as to whether the half-brother had sexually abused Doe when she was a young child, and that such a proceeding would lead to speculation because the evidence of the earlier abuse was inconclusive. Defendant argues this ruling was an abuse of discretion because, in addition to providing a motive for Doe to lie, the evidence would paint defendant as a father who was trying to protect Doe from someone who had abused her in the past.

Defendant also sought admission of a portion of a college admissions essay Doe had written referring to sexual abuse she suffered while in her mother's care as a young child, and to the fact that CPS placed her with her grandmother as a result. Although other portions of the essay came in for other reasons, the trial court excluded that portion as more prejudicial than probative.

The court also excluded evidence that Doe was abusive and violent toward M. when they were children, trying to set him on fire and trying to push him down a set of stairs. Defendant contended this evidence impeached M.'s testimony that Doe had not hurt him and had not been seriously "physical" with him.

The excluded evidence, defendant argues, was relevant for multiple purposes. It showed that Doe knew how to get help if she was being sexually abused, that she had a motive to wish to leave defendant's home when she was a teenager, that she knew a report of sexual abuse could lead to such removal, and that M. had reason to be afraid of Doe, all factors defendant argues would bolster his defense that Doe's allegations against him were

7

false.  And, he contends, the evidence that defendant himself requested the inquiry into Doe's inappropriate sexual behavior *at a time he was alleged to be abusing her*, that he told her to tell the truth, and that she told the investigator no adult had abused her further cast doubt on the evidence against defendant.

ii.     Admission of Prosecution Evidence

Defendant also argues the trial court wrongly admitted evidence of his neglect of his children.  The court allowed the prosecution to elicit evidence that defendant used physical discipline on his children, "whooping" them regularly and shaking them, and that Doe and defendant engaged in physical fights, in which sometimes defendant would hit her first.  Defendant does not contest the propriety of the evidence of violence as relevant to explain Doe's delay in reporting the abuse.  But he challenges the admission of testimony from multiple witnesses of defendant's neglectful conduct.  The jury heard evidence that the family's home was dirty and messy, that there often was not enough food, that defendant's girlfriends and sister gave money to the children to buy necessities, that defendant sometimes took the money, that the children sometimes had to wait outside the home in an unsafe neighborhood until defendant returned because they did not have a key, and that M. often smelled of urine as a child because of a bedwetting problem.

*B. Analysis*

A trial court has considerable discretion to determine whether proffered evidence is relevant, that is, whether it has " 'any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' " (*People v. Williams* (2008) 43 Cal.4th 584, 633, quoting Evid. Code, § 210.)  Section 352 of the Evidence Code allows a court to exclude evidence "if its probative value is substantially outweighed by the

probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." For purposes of this statute, " 'prejudice' does not mean damage to a party's case that flows from relevant, probative evidence. Rather, it means the tendency of evidence to evoke an emotional bias against a party because of extraneous factors unrelated to the issues," where the evidence is " ' "of such nature as to inflame the emotions of the jury, motivating them to use the information, not logically to evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction." ' " (*People v. Cortez* (2016) 63 Cal.4th 101, 128 (*Cortez*).)

On appeal, we review the trial court's rulings on the admissibility of evidence, including a ruling under Evidence Code section 352, for abuse of discretion, reversing only if the court acted in an "arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Chavez* (2018) 22 Cal.App.5th 663, 702; *People v. Hovarter* (2008) 44 Cal.4th 983, 1004.)

     i.     Evidence of 2006 CPS Investigation

We focus first on the exclusion of evidence that defendant instigated the 2006 CPS investigation into Doe's sexually inappropriate behavior shortly before her seventh birthday, that he told her to tell the truth to the investigator, and that Doe said the abuse stopped when she moved to defendant's home. This evidence, we conclude, is relevant, and indeed, the Attorney General does not contend otherwise. Critically, Doe testified the abuse began when she was six or seven years old, the approximate time defendant sought to show he contacted CPS. A jury could reasonably believe a person who was sexually abusing a child would be unlikely to encourage

9

CPS to investigate the child's sexual behavior, and unlikely to tell the child to tell the investigators the truth. From that evidence the jury could infer that, at least as of the time just before Doe's seventh birthday, defendant was not sexually abusing her, which would bolster his defense that Doe fabricated the charges against him. This was potentially powerful evidence in support of the defense.

The relevance of the proffered evidence also appears in light of testimony that CPS investigated the family and assessed Doe for neglect and for physical, emotional, and sexual abuse in 2008 and 2009, when Doe was living with defendant, and that she did not disclose any sexual abuse during those interviews. Evidence that Doe *did* disclose sexual abuse in 2006—even without an excursion into what actually happened before she moved to defendant's home—could create an inference that she was willing and able to report molestation to CPS investigators, lending greater significance to her failure to report any sexual abuse when speaking to CPS during the 2008 and 2009 investigations.

On the other side of the balance, as the trial court noted, was the possibility of confusion of the issues and a distracting plunge into the details of the earlier investigation. But the jury heard evidence that Doe may have been molested before coming to live with defendant, in the form of Doe's testimony about her vague memories of the abuse, her testimony that she wrote in a college admissions essay that she experienced sexual abuse when she lived with her mother, and defendant's testimony that Doe told him that her older brother had "do[ne] things to her" and "made her bleed in between her legs," and it heard about the 2008 and 2009 investigations. There is no basis to conclude that the jury would have been confused or that an unnecessary amount of court time would have been consumed by the addition

10

of evidence that defendant reported his concerns in 2006, that CPS investigated them, and that Doe told CPS no adult was abusing her, the earlier abuse had ended when she moved to her father's home, her father told her be truthful with investigators, and she would tell someone who would help her if she was being molested. In the circumstances, we conclude it was an abuse of the trial court's discretion to preclude defendant from introducing evidence of the 2006 investigation.

We next consider whether defendant was prejudiced by exclusion of this evidence. Defendant argues he was deprived of his federal constitutional rights to present a defense, to a fair trial, and to due process. As a result, he contends, the prejudicial effect of the erroneous ruling must be measured under the constitutional standard of *Chapman v. California* (1967) 386 U.S. 18, 24, under which reversal is required unless the error is harmless beyond a reasonable doubt.

The state law standard for evidentiary error is more lenient. Prejudice is shown where, after examining the entire case, the reviewing court concludes it is "reasonably probable" that the appealing party would have reached a more favorable result in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050 (*Richardson*).) This reasonable probability " 'does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

" 'As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense,' " and "the mere erroneous exercise of discretion under such 'normal' rules does not implicate the federal Constitution." (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.) Thus, the normal standard of prejudice when a court

11

improperly excludes defense evidence under Evidence Code section 352 is the state law standard. (*Cudjo*, at p. 611, citing *Watson*, *supra*, at p. 836.) Under this principle, the *Watson* standard applies when the ruling "is not a refusal to allow the defendant to present a defense, but only rejects certain evidence concerning the defense." (*People v. Garcia* (2008) 160 Cal.App.4th 124, 133.) We are not persuaded the ruling here prevented defendant from presenting his defense in a manner that violated his constitutional rights; rather, it was a misapplication of the rules of evidence.

Even under the *Watson* standard, the error requires reversal. In fact, the Attorney General makes no effort to show that the trial court's ruling excluding evidence of the 2006 investigation, if erroneous, was not prejudicial. Rather, he limits his harmless error argument to exclusion of other evidence—of defendant's neglect in the household and of Doe's behavior toward M.

The trial was largely a credibility contest between defendant and Doe; there was no physical evidence of the abuse and no indication any adult who visited or shared the home saw anything untoward. We do not discount the evidence of defendant's guilt. Not only did Doe testify at length about the abuse, but other witnesses, in particular her friend and her brother M., offered corroborating evidence. Both the friend and M. confirmed that Doe had told them of the abuse in the past. M. also confirmed or lent credence to aspects of Doe's account of events; he testified, for instance, that Doe and defendant spent time alone together in defendant's bedroom, that defendant told M. not to disturb them when he knocked on the door, that he once saw defendant unclothed in the bedroom with Doe, that he sometimes saw Doe under the covers of defendant's bed, that he saw her going from defendant's bedroom to the bathroom wrapped in a blanket or wearing a sweatshirt, and

12

that he saw them drinking and smoking marijuana together. After nearly 20 hours of deliberation over four court days, the jury concluded this testimony was credible. But the charges here spanned many years, and the excluded evidence was that at the beginning of the time period in which Doe testified defendant sexually abused her, he instigated a CPS investigation that would lead inevitably to Doe being questioned about whether she was being molested. This evidence, coupled with the evidence of Doe's failure to report sexual abuse in subsequent CPS interviews in 2008 and 2009, could have persuaded one or more of the jurors that defendant reported Doe's allegation of sexual abuse in 2006 with a clear conscience and that at least a portion of the prosecution's case was in doubt. There was, in our view, a " ' "reasonable chance, more than an abstract possibility" ' " that the jury would have reached a more favorable verdict had it heard this exculpatory evidence. (*Richardson*, *supra*, 43 Cal.4th at p. 1050, italics omitted.) In the circumstances, we conclude defendant was prejudiced by the exclusion of evidence, and the matter must be remanded for a new trial.

For the guidance of the trial court on remand, we address certain of defendant's remaining contentions.

ii.      Other Excluded Evidence

We next consider exclusion of portions of Doe's college admissions essay. The trial court admitted a portion of the essay in which Doe said that she first experienced sexual abuse while staying with her mother. But the court excluded a section of the same essay that it referred to as discussing "the mother's drug abuse, sexual abuse while in her care, and Child Protective Services placed her with her grandmother." From these general descriptions, we cannot conclude that the trial court abused its discretion in excluding this evidence as more prejudicial than probative (see Evid. Code, § 352), or that any error in excluding portions of the essay was prejudicial.

13

However, nothing prevents defendant, on remand, from again seeking admission of any portion of the essay, the trial court from exercising its discretion in determining whether greater portions of the essay should be admitted in support of the defense—particularly in light of the evidence of the 2006 CPS investigation—or, if a resulting judgment is appealed, defendant from arguing the cited portions of the essay should have been admitted.

As to the journal entry showing Doe had reconnected with her older half-brother over defendant's objections in 2014—approximately three years before she accused defendant of sexual abuse—on the record now before us the trial court could reasonably find this evidence of marginal relevance, and we see no abuse of discretion in excluding it.

Nor does defendant show an abuse of discretion in excluding the evidence that Doe was violent toward M. when they were young children. M. was 19 years of age when he testified and had for years not been living with Doe, so the court could reasonably conclude that any probative value as impeachment of his testimony that Doe had never hurt him, or as evidence that he testified falsely out of fear of her, was outweighed by the consumption of time an inquiry into these long-ago events would have taken.

### iii. Admission of Evidence

The trial court admitted evidence that the family's home was dirty and smelly, that M. had a bedwetting problem and his clothes frequently smelled of urine because there was not enough money to wash clothes, that there was not always enough money for food and other necessities and defendant sometimes took Doe's money, and that the children sometimes had to wait outside the home after school until defendant returned. The evidence was introduced through multiple witnesses—Doe, M., defendant's sister, the

14

mother of two of defendant's children, and another of defendant's former girlfriends.

The Attorney General argues the family's living conditions, in combination with defendant's use of physical discipline and an atmosphere of fear in the home, helped explain why Doe and M. failed to report defendant's sexual abuse to the authorities. While this connection might not be robust, the proper question is whether the trial court abused its discretion in concluding its potential for prejudice did not outweigh any probative value it might have. We find no abuse of that discretion. The reasons for Doe's failure to report the abuse over the course of many years were relevant, and we cannot say that evidence of neglect in the home, in concert with the admittedly proper evidence of physical violence, was irrelevant to Doe's state of mind. In any case, defendant's neglectful conduct was so much less shocking than the sexual abuse of which he was accused that it was unlikely to "evoke an emotional bias against [defendant] because of extraneous factors unrelated to the issues." (*Cortez*, *supra*, 63 Cal.4th at p. 128.)

## II.    Unanimity Instruction

Defendant contends the trial court erred in its response to a question the jury posed about the requirement for a unanimous verdict.

With the exception of count 6—continuous sexual abuse of a minor— each count charged defendant with a single act during a specified one- or two-year period beginning with Doe's seventh birthday, although she testified to frequent sexual acts during each of the years defendant abused her.

With regard to these counts alleging a single act during an extended period, the trial court instructed the jury on the requirement of unanimity pursuant to CALCRIM No. 3501 as follows: "The People have presented evidence of more than one act to prove that the defendant committed these

15

offenses.  You must not find the defendant guilty unless:  [¶] 1.  You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense;  [¶] OR  [¶] 2.  You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged."

During its deliberations, the jury asked for clarification of the second enumerated paragraph of this instruction as follows:  "Does 'all of the acts alleged' refer to the seven separate charges, or does it refer to a specific charge?  [¶]  In other words, if the jury agrees that oral copulation occurred at least once in a specified time period, but cannot agree on the exact instance, can that qualify as an agreement to a guilty charge?"  In response, the court first directed the jury to the instruction that it consider each count separately, then continued, "As it relates to the question on 3501, Part 2, and your question here, your example is otherwise if you agree on oral cop. occurred at least once in a specific period of time, but cannot agree on the exact instance, can that qualify as an agreement to a guilty charge?  You can. That's exactly how the law is in this particular area.  You take a look at that particular count.  What is the act that's required?  If that act that is required, you happen to agree that it occurred in that period of time, then you all have agreed on that count, and you move to the next count to determine what act has occurred.  Whatever that act sets forth, whether or not that act has occurred during that specific period of time, if you all agree it did, then you've dealt with it."

Defendant contends this additional instruction incorrectly stated the law because, according to defendant, it informed the jury that if they "agreed

16

that an improper act had occurred in the specific time period, that was good enough for conviction even if they could 'not agree on the specific act.' " Whatever the merits of this argument, we need not reach it here. Defendant raises no challenge to CALCRIM No. 3501 itself, and we think it unlikely a second jury will ask the same question and receive the same answer in a new trial. If, on remand, either party is of the view the standard instruction on unanimity requires further clarification as it relates to the facts of this case, counsel may raise that question in the trial court, for example by proposing a pinpoint instruction.

## III. Uncharged Sexual Offenses

Defendant contends he was deprived of his constitutional right to due process when the trial court allowed the jury to hear and consider evidence of the uncharged crimes to show his propensity to commit sexual offenses. He makes no other challenge to admission of this evidence, and he acknowledges that binding authority requires us to reject the constitutional claim he brings. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450 (*Auto Equity*).)

The jury heard evidence that defendant committed two uncharged offenses. First, in addition to testifying about orally copulating defendant, Doe testified that she had disclosed shortly before trial that defendant had orally copulated her. Second, defendant's sister testified that when she was six or seven years old and defendant was 14 or 15, he asked her to come into his bedroom, exposed his genitals to her, and asked her to put her mouth on them. When she refused, he asked her again, and she again refused and was then able to leave the room.

Over defendant's objection, the trial court instructed the jury it could consider evidence of the uncharged crimes if the People had proved by a

17

preponderance of the evidence that defendant committed them, and that if the People met this burden, the jury could use the uncharged acts as evidence defendant had a propensity to commit sexual offenses and was likely to commit the charged crimes.

As a general rule, evidence of prior offenses is not admissible to show a propensity to commit crimes in general or a particular type of crime. (*People v. Felix* (1993) 14 Cal.App.4th 997, 1004–1005; Evid. Code, § 1101, subd. (a).) An exception applies, however, when a defendant is charged with a sexual offense; in such a case, evidence is admissible for this purpose if it is not more prejudicial than probative under Evidence Code section 352. (Evid. Code, § 1108, subd. (a); *People v. Reliford* (2003) 29 Cal.4th 1007, 1012–1013.) Our high court has upheld this statutory provision against a challenge that it violates the constitutional right to due process. (*People v. Falsetta* (1999) 21 Cal.4th 903, 907, 912–922.) It has also concluded that the requirement that the *uncharged* offense be proved only by a preponderance of the evidence does not dilute the prosecution's burden of proving the *charged* offense beyond a reasonable doubt. (*Reliford*, at pp. 1015–1016.)

Despite these authorities, in order to preserve his claims for federal review, defendant argues that admission of uncharged sexual offenses to show propensity is unconstitutional and—in a footnote—that use of the lower standard of proof for the uncharged offense improperly undercut the prosecution's burden of proof. As he recognizes, we are bound by our high court's rulings in *Falsetta* and *Reliford* (*Auto Equity Sales, supra*, 57 Cal.2d 450), and we must reject his contentions.

18

## IV. Restitution and Stayed Fine

Defendant's final contentions are that the trial court erred in imposing a $10,000 restitution fine without a showing that he had the ability to pay it and that the abstract of judgment fails to reflect that a fine was stayed.

The probation report prepared before sentencing recommended the trial court impose a restitution fine of $10,000 (§ 1202.4, subd. (b)(1)), with a parole revocation fine of the same amount (§ 1202.45), a sex offender fine of $3,500 (§ 290.3), $280 in court operations assessments (§ 1465.8), and $210 in criminal conviction assessments (Gov. Code, § 70373).

At the sentencing hearing, the court indicated it would order the recommended $10,000 fines (staying the parole revocation fine). Defense counsel asked to have the fines and fees waived because defendant was indigent. (*People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).) The court said, "I'm going to order those fines and fees, but if you feel that *Dueñas* applies, . . . you can add the case on and we will deal with the fines and fees." After a recess, the court stated: "We are back on the record for a couple of items that I did not cover. . . . [¶] There's also a $3500 sex offender fine. I'm going to stay that fine. I'm not going to impose it." The court also ruled it would not impose the civil fines, but it did not expressly address *Dueñas* or defendant's ability to pay the restitution fine.

Section 1202.4, subdivision (b)(1) directs the trial court, unless it finds "compelling and extraordinary reasons for not doing so," to impose a restitution fine for a felony "commensurate with the seriousness of the offense," of between $300 and $10,000. Defendant contends that, under the rule announced in *Dueñas*, the $10,000 fine must be stricken or reduced to the statutory minimum of $300 in the absence of evidence showing he had the ability to pay it.

19

In *Dueñas*, Division Seven of the Second Appellate District held that, because the only reason the defendant could not pay the fines and fees the trial court imposed as a condition of probation was her poverty, it was unconstitutional to use the criminal process to attempt to collect a fine she could not pay.  (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1160.)  According to the court, due process of law required the trial court to hold a hearing on the defendant's ability to pay before imposing court facilities and court operations assessments under section 1465.8 and Government Code section 70373, and execution of a restitution fine under section 1202.4 must be stayed until the trial court held a hearing and concluded the defendant had the ability to pay the fine.  (*Id*. at p. 1164.)

Since *Dueñas* was decided, a number of cases have concluded the excessive fines clause of the Eighth Amendment, rather than due process principles, provides the proper analytic framework in this situation.  (See, e.g., *People v. Cowan* (2020) 47 Cal.App.5th 32, review granted June 17, 2020, S261952; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1067–1071; *People v. Kopp* (2019) 38 Cal.App.5th 47, 96–97, review granted Nov. 13, 2019, S257844.)[2]  That inquiry involves four considerations:  "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay." (*Kopp*, at p. 97.)  Still other cases have concluded *Dueñas* was wrongly decided without reaching the question of whether to consider ability to pay under the rubric of the excessive fines and fees clause.  (See, e.g, *People v.*

---

[2] The high court limited the issues to be briefed and argued in *Kopp* to (1) whether a court must consider a defendant's ability to pay before imposing fines, fees, and assessments, and (2) if so, which party bears the burden of proof of inability to pay.  (*People v. Kopp* (Nov. 13, 2019) 2019 Cal.Lexis 8371.)

*Hicks* (2019) 40 Cal.App.5th 320, 324–329, review granted Nov. 26, 2019, S258946; *People v. Petri* (2020) 45 Cal.App.5th 82, 89–92.)

Whatever the correct analysis, the fines and fees assessed necessarily fall with reversal of the judgment, and if defendant is again convicted on remand he will have the opportunity at that time to make any proper showing of indigence and of the other factors relevant to our Eighth Amendment jurisprudence. We therefore need not consider his challenge now.

Defendant also points out correctly that the abstract of judgment indicates inaccurately that the $3,500 sex offender fine was imposed rather than stayed. Ordinarily we would direct that the abstract of judgment be amended to correct this clerical error, but because we are reversing the judgment, amendment is unnecessary.

## DISPOSITION

The judgment is reversed.


TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
PETROU, J.


*People v. Traylor* (A159338)

21